IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **TRACY GREEN**, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No.: |
| v. | : |
| | : |
| **TRISTAR PRODUCTS, INC.**, | : |
| | : |
| Defendant. | : |

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, **TRACY GREEN** (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, hereby submits the following Complaint and Demand for Jury Trial against Defendant, **TRISTAR PRODUCTS, INC.** (hereinafter referred to as "Defendant Tristar" and "Defendant"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

**NATURE OF THE CASE**

1. Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a wide-range of consumer products, including the subject "Emeril Lagasse Pressure AirFryer Plus," which specifically includes the Model Number Y6D-AF-36B (hereinafter referred to as "pressure cooker(s)").

2. Defendant touts that its pressure cookers are designed with several "Built-In Safety Devices,"[1] which purport to keep the consumer safe while using the pressure cooker. Said "safety

---

[1] *See*, Emeril Lagasse Pressure AirFryer Plus Owner's Manual, pg. 12. A copy of the Owner's Manual is attached hereto as "Exhibit A."

1

devices" include a "safety lid lock," a "positive pressure mechanism," and a "lid positioning sensor."[2] These safety mechanisms are intended to prevent the unit from building pressure if the lid is not closed properly, as well as to prevent the lid from opening until all pressure is released.[3]

3.  Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed, and sold a product that suffers from serious and dangerous defects. Said defects cause a significant risk of bodily harm and injury to its consumers.

4.  Specifically, said defects manifest themselves when, despite Defendant's claims to the contrary, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

5.  Defendant knew or should have known of these defects but nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective pressure cookers despite the risk of significant injuries to Plaintiff and consumers like her.

6.  As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

---

[2] *Id*.
[3] *Id*. at pgs. 12, 14, 19.

## PLAINTIFF TRACY GREEN

7.  Plaintiff, **TRACY GREEN** is a resident and citizen of the Texarkana, Arkansas and is domiciled in the same. Plaintiff therefore is a resident and citizen of the State of Arkansas for purposes of diversity pursuant to 28 U.S.C. § 1332.

8.  On or about September 1, 2022, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cooker's supposed "built-in safety devices," which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## DEFENDANT TRISTAR PRODUCTS, INC.

9.  Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a variety of consumer products including, *inter alia*, pressure cookers, air fryers, sprinklers, hoses, and TV antennas.

10. Defendant Tristar boasts that "[s]uperior innovation at affordable prices has enabled [them] to create #1 brands worldwide for more than 25 years" and that its products "solve everyday problems, helping to make life easier and more enjoyable for millions of consumers."[4]

11. Prior to April 30, 2018, Defendant Tristar was known as "Tristar Products, Inc.," and was a Pennsylvania Corporation with its registered place of business at 2620 Westview Drive,

---

[4] https://www.tristarproductsinc.com/ (last accessed January 30, 2024).

Wyomissing, Berks County, Pennsylvania 19610, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

12. As of April 30, 2018, but prior to June 12, 2020, Defendant Tristar became "Tristar Innovative Products, Inc." and became a Florida Corporation with its registered place of business at 1293 North University Drive, #322, City of Coral Springs, Broward County, Florida 33071, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

13. As of June 12, 2020, Defendant Tristar changed its name back to "Tristar Products, Inc.," and changed its registered place of business to 2050 West County Highway 30a, #M1-109, Santa Rosa Beach, Walton County, Florida 32459.

14. As of August 1, 2024, Defendant Tristar changed its registered place of business to 505 Maitland Avenue, Suite 1170 Altamonte Springs, FL 32701.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Tristar is a resident and citizen of this district.

17. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Florida and intentionally availed itself of the markets within Florida through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

18. Defendant Tristar is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

19. Defendant aggressively warrants, markets, advertises, and sells its Emeril Legasse Pressure AirFryers as revolutionary, pro-grade kitchen appliances. In an infomercial advertising the Emeril Legasse line of Pressure AirFryers, Defendant boasts that renowned chef Emeril Legasse is "revolutionizing your kitchen with his Pressure AirFryer."[5] Emeril himself goes on to say of the pressure cooker, "trust me, the first time you work with a pro-grade appliance you'll be hooked"[6] and "you won't take it off your counter."[7]

20. In an advertisement for the Home Shopping Network, Chef Emeril Legasse assures consumers that the Pressure AirFryers are safe, stating "we've taken all the fright out of this, okay? Years and years ago, as you know, pressure cookers had a bad rap because…it was like a rocket ship. We have done with technology and…eliminated all of that stuff so that you can feel comfortable cooking all of these functions at home with the family."[8]

21. According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to have "Built-In Safety Devices," misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use. Said "Safety Devices" include, but are not limited to, the following:

- **Safety Lid Lock:** The Pressure Lid tabs connect under the Base tabs to lock the Pressure Lid to the Base when fully closed.

- **Positive Pressure Mechanism (Float Valve):** When the pressure reaches a required point, the pressure lifts the Float Valve up, contacting the Locking Pin.

---

[5] https://www.youtube.com/watch?v=yTIEY_wh1Rw&list=PL29WOZ8ueu0o3JUDvKZObpryBTGQFhyAk (video with a runtime of 28:30) at 1:48 – 1:51 (last accessed January 30, 2024).
[6] *Id*. at 2:02 – 2:07.
[7] *Id*. at 23:11 – 23:13.
[8] https://www.youtube.com/watch?v=IqIlzpYAdZw (video with a runtime of 14:43) at 11:47-12:09 (last accessed January 30, 2024).

- **Lid Positioning Sensor:** A magnetic sensor indicates whether the Lid is fully closed. The Unit will beep and display "LID" when the Lid is not locked or is not required for a preprogrammed setting.[9]

22. Additionally, the Owner's Manual claims that the pressure cooker "has a safety mechanism that prevents the Pressure Lid from opening until the pressure has been lowered"[10] and that "[t]he Magnetic Safety Sensor assures the Pressure Lid is properly closed before the Unit can pressurize."[11]

23. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased and used the pressure cooker with the reasonable expectations that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

24. Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or her family and did so in a manner that was reasonable and foreseeable by Defendant Tristar.

25. However, the aforementioned pressure cooker was defectively designed and manufactured by Defendant in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

26. Defendant's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

27. Further, Defendant's representations about "safety" are not just misleading, they are flatly

---

[9] *See* Pressure AirFryer Plus Owner's Manual, pg. 12.
[10] *Id.* at pg. 14.
[11] *Id.* at pg. 19.

wrong, and put innocent consumers like Plaintiff directly in harm's way.

28. Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from being rotated and opened while pressurized.

29. As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the pressure cooker.

30. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

31. At the time of Plaintiff's injuries, Defendant Tristar's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

32. Defendant's pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendant.

33. Plaintiff and her family did not misuse or materially alter the pressure cooker.

34. The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

35. Further, a reasonable person would conclude that the possibility and risk of serious harm outweigh the burden or cost of making the pressure cookers safe. Specifically:

- The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

- The seriousness of the potential burn injuries resulting from the product drastically outweigh any benefit that could be derived from its normal, intended use;

- Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

- Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

- Defendant failed to adequately test the pressure cookers; and

- Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

36. Defendant's actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

**COUNT II**
**<u>NEGLIGENCE</u>**

37. Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

38. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

39. Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, it:

- Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;
- Placed an unsafe product into the stream of commerce;
- Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and
- Was otherwise careless or negligent.

40. Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market its pressure cookers to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## DEMAND FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages, including exemplary damages if applicable, to which she is entitled by law, as well as all costs of this action and interest to the full extent of the law, whether arising under the common law and/or statutory law, including:

- judgment for Plaintiff and against Defendant;

- damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's pressure cooker;

- pre and post judgment interest at the lawful rate;

- a trial by jury on all issues of the case;

- an award of attorneys' fees; and

- for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

**JOHNSON BECKER, PLLC**

Dated: August 4, 2025

*/s/ Lisa A. Gorshe, Esq.*
Lisa A. Gorshe, Esq. (FL #122180)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
lgorshe@johnsonbecker.com

***Attorneys for Plaintiff***